JACK P. DICANIO (SBN 138782)
jack.dicanio@skadden.com
ALLEN L. LANSTRA (SBN 251510)
allen.lanstra@skadden.com
MATTHEW J. TAKO (SBN 307013)
matthew.tako@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

Attorneys for Defendant
Christopher K. Kamon

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>    v.<br><br>Christopher K. Kamon,<br><br>    Defendant. | CASE NO.: 2:22-mj-04385<br><br>**DEFENDANT CHRISTOPHER K. KAMON'S REPLY IN SUPPORT OF MOTION TO REVOKE DETENTION ORDER**<br><br>Date:    January 9, 2023<br>Time:    1:30 P.M.<br>Judge:   Hon. Dale S. Fischer<br>Courtroom: 7D |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

Whether pre-trial release should be denied requires a two-part inquiry: (1) whether the defendant poses a danger to the community or is a flight risk, and (2) if so, what conditions of release may mitigate the concern. In its Opposition (ECF No. 35), the Government argues only about whether Mr. Kamon is a flight risk. The Government fatally does not contest the cornerstones of the proposed conditions of Mr. Kamon's pre-trial release: (a) passport surrender; (b) movement restrictions with electronic monitoring; and (c) mandatory quartering with his aunt and uncle, who are pledging their family home of four decades.

Indeed, despite this Court's consideration of the Motion (ECF No. 29) being *de novo*, the Government leans on the District of Maryland Magistrate Judge's conclusion that Mr. Kamon presents a flight risk—but ignores the Government's admission and the Magistrate Judge's acknowledgment at that initial hearing that release could be appropriate if there were a reliable third-party custodian, which did not exist in Maryland. That issue is now resolved, and the Government does not and cannot challenge that Mr. Kamon's aunt and uncle are trustworthy third-party custodians.

The Motion should therefore be granted and Mr. Kamon released on the conditions proposed.

## II. Argument

### A. Mr. Kamon Is Not A Flight Risk

The Government focuses on a number of disparate events and the interview of a motivated witness to manufacture an image of Mr. Kamon's conduct that is not supported by a critical examination of the facts. Tellingly, none of the purported conduct the Government highlights resulted in Mr. Kamon fleeing from the Government. He was successfully arrested re-entering the United States in his own name. His whereabouts and activity were neither hidden nor disguised. Mr. Kamon

openly and transparently used his real name to travel, transfer money, purchase property in The Bahamas, seek residency in The Bahamas, and even notify the U.S. Post Office to forward his mail in California to his sister's house in Maryland.[1] His family and friends were aware of his move and were even planning to visit him in The Bahamas over the holidays.[2] (Mot. at 3.) And, during this time period, his counsel was also in contact with Government attorneys on his behalf.[3]

### 1. The Government's Untested Positions About The Underlying Merits Do Not Justify Denying Pre-Trial Release

The Government's flight-risk argument centers on its unproven belief about the underlying allegations. For example, the Government repeats its untested and unproven allegation that Mr. Kamon took $10 million from Girardi Keese. (Opp. at 5.) Of course, the Government always proclaims that it has an overwhelming case at the pre-trial phase, when its allegations are untested. At this point in this case, there is merely a Government complaint and the matter has apparently not even been put to a grand jury—much less a trial jury where witnesses are confronted and evidence countered. That is part of the reason why, as even the Government concedes (Opp. at 6), the law recognizes that the purported strength of the evidence is the least important of the pre-trial release factors. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

---

[1] The Government alleges that Mr. Kamon attempted to purchase a home in The Bahamas in an associate's name. (Opp. at 9.) Despite being challenged to do so, the Government notably does not supply the evidentiary basis for this assertion.

[2] The Government has not and cannot suggest these individuals—several of whom are affirmatively reliable and trustworthy as evidenced by their security clearances—would ever conceal Mr. Kamon's whereabouts.

[3] Around the time that Mr. Kamon was arrested in Maryland, a plaintiff was apparently attempting to serve a civil complaint on Mr. Kamon. Plaintiff's counsel was informed that undersigned counsel does not represent Mr. Kamon in any civil litigation. Plaintiff's counsel then served a subpoena on undersigned counsel's law firm seeking documents reflecting Mr. Kamon's last known contact information. Because the information supplied in response to that subpoena did not include Mr. Kamon's address in The Bahamas, the Government insinuates that Mr. Kamon was attempting to hide from even his counsel or keep his whereabouts unknown to them. That is wrong. The undersigned counsel was always able to reach Mr. Kamon via phone or email throughout this entire period.

In an attempt to bolster its self-determinations of the underlying merits, the Government in a footnote represents that it "voluntarily provided defendant with substantial discovery related to the instant allegations," including "concrete evidence of [Mr. Kamon's] culpability." (Opp. at 5.) This is overstated. Again, the Government always maintains that it has "concrete evidence of culpability." But Mr. Kamon and undersigned counsel disagree with the Government's analysis, and this is not the forum to reconcile, much less blindly accept, the Government's views.

Moreover, the Government improperly and prejudicially references Mr. Kamon's alleged involvement in other activities at Girardi Keese, which are apparently part of another investigation according to the Opposition. It is unclear whether those allegations are attendant to a grand jury investigation out of this District. Regardless, those matters are not alleged in the Complaint against Mr. Kamon that were submitted as the basis for his arrest. It is elementary, at least in this nation, that the Government cannot detain us based on unstated allegations.

### 2. Mr. Kamon Was Not In A "Rush to Flee"

The Government asserts that Mr. Kamon was in a "rush to flee" beginning in August 2021 because of unfavorable publicity about Girardi Keese. (*Id.* at 6.) What the Government ignores, however, is that due to Girardi Keese's demise, Mr. Kamon lost his employment of over twenty years. His economic status changed, and given the circumstances, there is nothing remarkable about making changes to address that situation. Tellingly, he did not sell his primary residence and relocate to Maryland (Mot. at 3) until almost two years after the issues relating to the firm arose and the matter had been referred to prosecutors by a U.S. District Court in Chicago.[4] Waiting around for almost two years after news of the criminal referral and engaging directly with prosecutors during that period (*id.* at 2) is hardly indicative of any "rush." Rather,

---

[4] Debra Cassens Weiss, Judge Freezes Assets of Winning 'Erin Brockovich' Law Firm After Suit Alleges Stolen Settlement Funds, ABA Journal (Dec. 14, 2020, 1:51 PM), https://www.abajournal.com/news/article/judge-freezes-assets-of-winning-erin-brockovich-law-firm-after-suit-alleges-stolen-settlement-funds

Mr. Kamon's actions are consistent with someone who was simply making a fresh start on his own timeline. (*Id.* at 2-3.)

And again, Mr. Kamon's move from California to The Bahamas was not an attempt to "flee." The Bahamas is a small island nation with an extradition treaty with the United States. (Mot. at 9.) The Government argues that The Bahamas could have been a "launch pad" for Mr. Kamon to travel elsewhere. (Opp. at 11.) But this makes no sense. Not only was Mr. Kamon actively seeking residency status, he purchased a home in The Bahamas instead of renting. Both of those facts undercut the Government's baseless supposition that his move to The Bahamas was some sort of intermediate step.

### 3. Cell Phones And Web-Based Messaging Are Not Evasion

The Government argues that having multiple phones is indicative of Mr. Kamon being "suspicious of law enforcement investigations." (Opp. at 10.) But it provides no explanation as to how the Government could not track the use of those devices or how having these particular devices somehow means evasion. The Government just declares it, notwithstanding Mr. Kamon's valid reasons for having the phones. (Mot. at 11.)

Likewise, the use of Signal as a preferred means of communicating does not suggest an intent to avoid detection by law enforcement. Signal is a widely used messaging platform, freely available on Apple's App Store.[5] It is commonly used to avoid data fees in overseas communications. (Mot. at 8-9.) The Government does not dispute the legitimacy of Signal or establish that Mr. Kamon was using Signal to conceal communications from the authorities. It merely answers with the speculation that Mr. Kamon would not want to eliminate data fees by using WiFi because he previously spent large sums of money on other items. (Opp. at 10.)

---

[5] App Store Preview, https://apps.apple.com/us/app/signal-private-messenger/id874139669 (last visited Jan. 5, 2023).

### 4. Mr. Kamon's Name Is Directly Connected To All Transfers

The Government also makes reference to Mr. Kamon's monetary transfers to foreign accounts. (Opp. at 8-9.) Faced with the reality that Mr. Kamon is directly identified on every transaction it cites, the Government still confusingly maintains that he was trying to hide the transactions. (*Id.*) This makes no sense. His name is associated with each of the transactions and there is no evidence he attempted to structure the transactions to avoid detection or reporting. Indeed, from subpoenaed records, the Government easily identified each of these transactions—because they are from his accounts and use his name. The Government also fails to explain how this relates to whether Mr. Kamon is a flight risk or would comply with the terms of pre-trial release.

### 5. Mr. Kamon Cooperated With The Bankruptcy Trustee

Setting aside the extraordinary suggestion that the exercise of Fifth Amendment rights is evidence of flight risk (Opp. at 7), the Government cannot credibly assert that Mr. Kamon did not cooperate with the bankruptcy trustee when he reached an agreement for a payment and voluntarily produced documents. (Mot. at 2.)

### 6. Mr. Kamon Used His Sister's Maryland Home As His Home Base While In The Process Of Moving To The Bahamas

Despite clarification in the form of a declaration from his sister, the Government continues to assign mischief to confusion from out-of-context comments to Pretrial Services in Maryland about Mr. Kamon's residency at the time of his arrest and fails to appreciate the commonsense explanation provided by his sister. Mr. Kamon did not yet have residency in The Bahamas. (Mot. at 10.) As such, he did not believe it would be truthful to state that he resided there. Mr. Kamon's sister knew that he purchased a home in The Bahamas, but she did not yet have the address. (*Id.*) She knew Mr. Kamon had purchased a home and was planning to move there, so she

responded with that location when asked where Mr. Kamon lived.  The Government focuses on this discrepancy to suggest malintent which simply is not there.

### B. Mr. Kamon's Proposed Conditions Reasonably Assure His Attendance At Trial

The Government spends many pages arguing that Mr. Kamon is a flight risk, talking at length about the past.  Meanwhile, it ignores the actual remedy being offered to cure the Government's concerns.  The surrender of Mr. Kamon's passport is not acknowledged; neither is electronic monitoring.  Close family serving as third-party surety, with Mr. Kamon living in their home, which was suggested by the Government in the Maryland hearing as being a reliable method for ensuring Mr. Kamon's compliance with bond conditions (Declaration of Ali Moghaddas (ECF No. 35-1) ("Moghaddas Decl.") at Ex. 1 (31:24-32:1)), is not mentioned.

Each of these strongly favor the granting of pre-trial release to Mr. Kamon as they forcibly assure his attendance at trial.  These same conditions are applied every single day to countless defendants across the country.  They are applied to defendants who are facing criminal charges with significant penalties.  They are applied to defendants who exercise their constitutional rights.  They are applied to defendants who have previously traveled internationally.  They are applied to defendants who have multiple electronic devices.  And they are effective in ensuring the attendance of those defendants.  The Government never explains why these protocols are somehow insufficient here.  That intentional silence is deafening—and reflects a concession that the conditions are, in fact, sufficient.

The only thing the Government does is attempt to discredit some of the real properties in the proposed bond package. First, the Government states that the proffer of The Bahamas residence is improper because it alleges that it was purchased with "tainted funds." (Opp. at 11.)  That is, of course, the theory of the Government's

untested Complaint and has not yet been proven.[6] Second, the Government attacks one of Mr. Kamon's sureties as possibly have been involved in the alleged "scheme." (Opp. at 12.) The Government does not dispute that the surety received payment for legitimate construction work, and makes no effort to explain how monies paid for legitimate work by a third party uninvolved in the allegations set forth in the Complaint somehow taints the third party's ability to use his home to secure Mr. Kamon's appearance at trial, instead simply reaching a conclusion (without any legal support) that the surety "must" be disqualified.

### III. Conclusion

Mr. Kamon respectfully submits that his proposed property bonds and bail conditions are more than sufficient to satisfy the Government's concerns and requests that the proposed bond package be approved by this Court.

DATED: January 5, 2023

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Jack P. DiCanio*
Jack P. DiCanio
*Attorneys for Defendant Christopher K. Kamon*

---

[6] In an effort to identify additional property to secure his commitment to fulfill his pre-trial obligations, Mr. Kamon added the Bahamas home to his bond proposal. Mr. Kamon's counsel was not aware of the Government's purported efforts to seize that property until it was first suggested in the Opposition. But regardless of those efforts, if the Court deems it necessary, Mr. Kamon is willing to post the Bahamas home as collateral to secure his conditions of pre-trial release.