# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | MJ 22-4385 DUTY |
| Plaintiff, | |
| | Order on Motion to Revoke Detention Order (Dkt. 29) |
| v. | |
| CHRISTOPHER K. KAMON, | |
| Defendant. | |

    Defendant Christopher K. Kamon has moved for reconsideration of the order detaining him pending trial entered in the District of Maryland.[1]

---

[1] This is a de novo review, <u>United States v. Koenig</u>, 912 F.2d 1190, 1191 (9th Cir. 1990), although the Court certainly agrees with the magistrate judge's conclusion based on the information he had.

Kamon was the Chief Financial Officer of the Girardi & Keese law firm (GK), which filed for bankruptcy after nearly $100 million in settlement funds were allegedly stolen from GK clients. Independent from that fraud, and as immediately relevant here, Kamon is accused of defrauding GK itself of over $10 million, which was allegedly funneled to bank accounts and properties for Kamon's personal benefit.

The government alleges that in 2021 Kamon began liquidating his assets, wiring millions of dollars into foreign accounts in The Bahamas and elsewhere, and purchasing a $2.4 million home in The Bahamas. A witness who had been intimate with Kamon states that Kamon was planning to seek permanent residence in The Bahamas. In September 2022, Kamon flew to The Bahamas and on September 22, 2022, failed to board his return flight to the United States. On November 5, 2022, Kamon flew to Baltimore, Maryland, and was arrested on arrival. A judge in the District of Maryland ordered Kamon detained based on a significant risk of flight prior to trial. At the hearing, the Maryland judge noted that Kamon had misrepresented his place of residence. Kamon claimed that he resided with his sister in Maryland, but, in fact, his sister was unaware of where he was living.

A criminal defendant may be detained pending trial if he is either a danger to the community or a flight risk. Only the latter is at issue here. Detention should be ordered only if "no condition or combination of conditions will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(e). For the purposes of detention in this case, the government bears the burden of demonstrating the danger of flight risk by a preponderance of the evidence. United States v. Santos-Flores, 794 F.3d 1088, 1090 (9th Cir. 2015). "Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant." Id. As relevant to this case, the factors to be considered are:

(1) the nature and circumstances of the offense;

(2) the weight of the evidence against the defendant; and

> (3) the history and characteristics of the defendant including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings."

18 U.S.C. § 3142(g). The weight of the evidence against the defendant is the least important of these factors. United States v. Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985).

Kamon is facing very serious charges with the potential of a significant prison sentence. The government estimates a potential Sentencing Guidelines range of 135-168 months relating to the fraud against GK itself, and potentially more time if Kamon is eventually charged in conjunction with the much larger fraud perpetrated against the clients of GK. The possibility of a lengthy sentence gives a defendant a greater incentive to flee. United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990).

The Court is not in a position to opine authoritatively on the merits of the government's underlying case, but the alleged fraud does not appear to be particularly complex and the government claims to have testimony and cooperation from several witnesses who were the direct beneficiaries of the alleged theft from GK. Further, Kamon does not directly dispute the charges in the present motion, stating only that the evidence against the defendant on the underlying charge is the least important factor. Given this, the Court finds that the government's case is at least fairly strong against Kamon.

As for the particular characteristics of the defendant, the government overstates the significance of certain facts. The Court does not find it particularly compelling that Kamon was using encrypted applications to communicate with others. Many communication apps are encrypted and the apps mentioned – Signal and WhatsApp – are commonly used. The Court also is not convinced that Kamon intended to mislead when he identified his sister's Maryland home as his

3

residence. Kamon had sold his California home and appeared to be moving to The Bahamas at the time, and, therefore, was arguably between houses. It is at least plausible that Kamon identified his sister's home as the only stable base where he could be located or at least located within the United States. Nevertheless, he apparently did not provide that address or an address in The Bahamas to his own lawyers.

However, many of Kamon's characteristics favor detention. First, and most obviously, he has transferred millions of dollars into overseas accounts and overseas properties that he could presumably tap while living as a fugitive. He is now unemployed and, according to the charges in this case, was stealing from his employer when he was employed. He was a resident here and had community ties here, but by his own admission, he cut those ties and made significant steps to move to The Bahamas, outside of the jurisdiction of any authority that might charge him with crimes related to GK. Kamon paints this as a "fresh start," but there is a fine line between a "fresh start" and fleeing justice when one has been in close contact with an enormous fraud such as the one alleged to have occurred at GK. Kamon's possession of four phones on detention in Baltimore is also suspicious, but not necessarily unexplainable, especially given that the government has not articulated any specific way that the multiple phones could help Kamon evade justice.[2] Kamon is also not a person naïve about international travel; he has traveled fairly extensively outside of the United States. There is also evidence that Kamon has failed to cooperate in civil cases against GK and with the GK bankruptcy trustee. In addition, even a professional process server was unable to locate him to serve process in a civil case against him now pending in this district. Further, while there is no direct evidence that Kamon knew he was personally a target of any criminal investigation, Kamon has claimed his Fifth Amendment right against self-incrimination in civil cases and surely was aware of

---

[2] There apparently is some evidence that he had become paranoid about the ongoing investigation and was starting to cycle through phones.

the potential for criminal charges in relation to the shocking and unprecedented fraud against GK clients.

On the other hand, The Bahamas has an extradition treaty with the United States and is not necessarily a desirable place to flee as an American citizen. Kamon also did not go through extraordinary measures to hide his asset transfers. While he used LLCs to hold property, Kamon is openly listed as an owner or contact of those LLCs. There is also no evidence that Kamon sought to hide his move to The Bahamas or his location in general.

In considering this motion, the Court has reviewed the parties' filings as well as the presentence report, which recommends detention.

The Court finds that the government has proved that Kamon is a flight risk by a preponderance of the evidence. The issue then becomes what condition or combination of conditions, if any, is sufficient to reasonably assure his appearance.

In the Court's experience, neither surrender of a passport nor electronic monitoring prevents a defendant from fleeing, though the Court would certainly require both. The Court attributes no value at all to an unjustified bond. A <u>Nebbia</u> hearing would certainly be required before any potentially tainted cash or property was considered. The property proffered by Kamon's aunt and uncle is insufficient by itself to reasonably assure Kamon's appearance and the Probation and Pretrial Services Office would have to opine as to the whether they were appropriate sureties. The Court is open to considering a proposed combination of conditions, but the present package prosed by Kamon is not nearly adequate.

Kamon is ordered detained. He is remanded to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility must

deliver Kamon to a United States marshal for the purpose of an appearance in connection with a court proceeding.

   IT IS SO ORDERED.

DATED: January 9, 2023

                                              Honorable Dale S. Fischer
                                              UNITED STATES DISTRICT JUDGE